[Civ. No. 7375. First Appellate District, Division Two.—April 30, 1930.]

In the Matter of the Estate of JAMES C. PEACOCK, Deceased. ZILPHA NELLIE PEACOCK, Respondent; LOYAL R. PEACOCK et al., Appellants.

Pierre A. Fontaine for Appellants.

Kilpatrick & Goodman for Respondent.

STURTEVANT, J.—James C. Peacock died at his home in Berkeley on the eleventh day of October, 1928. Thereafter Loyal R. Peacock presented to the probate court a document purporting to be the last will and testament of the deceased and applied to have the same admitted to probate. Shortly thereafter Zilpha N. Peacock, as the surviving wife of the decedent, filed a contest. The contest was answered and a trial was had before the trial court sitting. with a jury. The jury returned a verdict in favor of the contestant and an order was entered refusing to admit the will to probate. From that order the proponents have appealed and have brought up a typewritten record.

The second amended contest was based on two grounds, unsoundness of mind, and undue influence. At the conclusion of the proceedings had in taking the evidence all issues were abandoned by the contestant except that of undue influence. The proponents assert that there was no evidence introduced to sustain the allegations of undue influence. In support of this assertion they print upwards of 150 pages of the testimony. In reply the contestant summarizes the case and calls to our attention such portions of the record as, according to her contention, tend to support the order complained of.

The decedent had been married twice. By his first wife he had two sons, Loyal and Albert, who are the proponents of the will. During the life of the first wife the decedent had become the owner of a house and lot in Oakland of the value of $4,000 and which was free from encumbrances. Later they acquired a lot at 5822 Shattuck Avenue in Oakland. The decedent built a house on that lot and installed furniture therein. Thereafter he married the contestant and at the time of the marriage he owed the Oakland Bank

$3,500. That would be about April 23, 1924, the date of the marriage. At that time the decedent was an engineer on one of the ferry-boats, in the employment of the Southern Pacific Company. The contestant was at the time of her marriage a widow. She had three daughters and one son. At times the contestant was engaged in doing restaurant work. On February 1, 1928, the decedent retired from active duty and commenced to draw a pension. The earnings of both went toward the payment of household expenses and the debt to the bank. At the time of his death the balance owing to the bank was $2,050. By the terms of the purported will the decedent directed that the court of competent jurisdiction might ascertain and determine the amount of community property of himself and the contestant and that said court should confirm to the contestant her rights therein. He also bequeathed to her $100. All of the rest of his property he bequeathed to his two sons, Loyal and Albert, share and share alike.

In support of the claim that the will was made under undue influence the contestant calls to our attention that at the time it was made the testator was seventy years of age, suffering from many illnesses, very weak physically and enfeebled; that Loyal R. Peacock during the latter days of his father's life attended to his father's business, cashed his father's checks, kept his father's papers and stood in a confidential relationship to him; that prior to the execution of the will Loyal admitted that his father had spoken of making a will and had discussed some property matters with him; that whenever Loyal visited his father during the last illness the attitude of the testator toward the contestant was materially affected and changed; that during the time that the will was signed the contestant was not present, but was absent engaged in her work; that the decedent did not directly employ the attorney who drew the will, but the attorney was called by the wife of Loyal; that the attorney upon being called went to Loyal's house and there met the decedent and discussed the provisions of the purported will; that said discussion occurred in the presence of Loyal; that at no time did the decedent discuss any matters with the attorney except in the presence of one or both of the decedent's sons; that at the time of the execution of the will, although the weather was fair and the decedent lived

only one block away, Loyal called at the decedent's house and took him in an automobile to Loyal's house; that the decedent was so removed for the purpose of executing the will in the absence of decedent's wife and without her knowledge and when she returned to her home immediately thereafter she found her husband in an extremely exhausted physical condition; that at the time the decedent signed the will Albert Peacock was also present; that after Mr. Fontaine had prepared the will · he took it to the house of Loyal and there it was signed in the presence of both Loyal and Albert; that there is a conflict in the testimony as to what Loyal's wife said to Mr. Fontaine when telephoning him to call on the deceased. Mrs. Peacock, Jr., testified that she did not state the purpose of the call. Mr. Fontaine testified that she did; that Loyal paid Mr. Fontaine for drawing the will, that is, Loyal delivered the money to Mr. Fontaine, but the money had been given to him by the decedent with directions to send it to Mr. Fontaine; and finally it is asserted by the contestant that the will itself is unnatural because it gives to the widow only what the law would give to her as her share in the community property, plus the sum of $100 and then gives all the rest of the estate to the decedent's two sons.

Having called to our attention these matters the contestant cites *Estate of Gallo,* 61 Cal. App. 163 [214 Pac. 496], and quotes extensively therefrom. However, that authority is not in point. The court was there discussing an order granting a motion for a nonsuit made at the end of the contestant's case. The facts in that case were very different from the facts in this case. In the instant case the decedent left to his only children the property which the mother of those children and the decedent had accumulated. In the Gallo case the decedent left the bulk of her estate to a mere stranger, a small portion of her estate to her son and practically nothing to her adopted daughter. Furthermore, the report of that case recites *verbatim* many facts showing or tending to show undue influence. It is statutory law in this state that it will be presumed that persons are innocent of crime or wrong; that prior transactions have been fair and regular; that the ordinary course of business has been followed and that the law has been obeyed. Conceding with entire liberality that Loyal stood in the confidential relation

to his father; that by the terms of the will a gift was made to him and that on the hearing of the contest it was his duty to fully disclose all of the facts, the record shows that these things were done. The proponents called and examined fifteen or twenty witnesses. Among them they called and examined and turned over for cross-examination Mrs. Peacock, Jr., the individual that the decedent asked to inquire about an attorney; Mrs. Taylor, the individual of whom Mrs. Peacock made her inquiry; Mr. Fontaine, the attorney recommended by Mrs. Taylor and summoned over the telephone by Mrs. Peacock, Jr.; both of the sons who were present when the will was executed; both of the witnesses who witnessed the will, together with many others. Having done so it is freely submitted that the contestant is unable to and does not cite any parts of the record which contain any fact or facts proving or tending to prove undue influence. It is very clear that the proponents have met any burden whatever that may rest on them, and having done so that there is nothing in the record supporting the order.

The order is reversed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 29, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 26, 1930.